FOSTER *v.* PARSONS *et al.*

(Division A.   June 9, 1947.)

[30 So. (2d) 800.   No. 36479.]

Creekmore & Creekmore, of Jackson, and **Brunini, Brunini & Everett**, of Vicksburg, for appellant.

**Butler & Snow**, of Jackson, for appellees.

Argued orally by **Rufus Creekmore**, for appellant, and by **C. B. Snow**, for appellees.

**McGehee, J.**, delivered the opinion of the court.

The parties to this suit, J. L. Foster, Paul E. Parsons, and T. J. Neal, were engaged in the business of buying, selling, and trading in oil and gas leases, royalties, and mineral rights under an oral partnership agreement for the period beginning about November 15, 1944, and ending as of midnight, March 31, 1945. During that time each of the partners would frequently buy and sell such leases, royalties, and mineral rights, in their own name, respectively, giving their individual attention to the negotiations, and then divide the profits and share the losses of the several transactions in what they termed a "partnership or joint venture," under the firm name of Neal, Parsons, and Foster.

In the latter part of February of 1945, the appellee Parsons ascertained that the Wilbe Lumber Company, of

Shenandoah, Iowa, would probably give an oil and gas lease on approximately 32,000 acres of land which it owned in Rankin and Simpson counties. The purchase of such a lease involved an expenditure of approximately $15,000 at fifty cents per acre. The problem of the partnership was to obtain, in advance, a commitment from some major oil company to purchase from the member of the firm in whose name such a lease might be taken from the Wilbe Lumber Company, what is termed a "shooting option" at a profit to the partnership. The negotiations to that end were carried on by the said appellee with the Carter Oil Company for some two or three weeks prior to the discontinuance of the partnership, and resulted in obtaining from the said oil company a definite commitment, on March 30, 1945, to purchase a six month shooting option to explore for oil and gas at the price of seventy-five cents per acre, which would result in a profit on the lease of approximately $7,500, with the right on the part of the partners to retain a reversionary interest in the same.

On or about March 15, 1945, the appellee Parsons, who was undertaking to negotiate this particular transaction—the largest one the firm had undertaken to handle—announced his intention to withdraw from the firm as of March 31st or April 1st thereafter; and it is his contention that it was thereupon verbally agreed that all items not concluded by March 31st would be continued by the individual member who was handling a particular transaction, and that he would thereafter conclude it for his sole benefit and as his own deal. But the appellant Foster denies that there was such a verbal agreement as to how the transactions would be handled after March 31st, and testified that where they could not be concluded on or prior to that date, it was understood that the profits would be divided as to such partnership matters, without regard to who might conclude the same.

The appellee Neal supports the above contention of Parsons to some extent, but he did not seem to then understand that the appellant Foster was to be cut out of the deal. He participated with the appellant in his effort to sell at a better price a shooting option to the Lion Oil Company on the Wilbe Lumber Company lands after March 31, 1945, and prior to the execution of the written option to the Carter Oil Company on April 6, 1945, and apparently Neal, therefore, considered that all of the partners were still interested therein. And it is conceded by the testimony of all the parties that this lease was being negotiated for as a partnership asset and dealt with as such prior to March 31, 1945. Neal sent Parsons $100 as expense money out of the firm's bank account on April 2, 1945, for use in connection with his trip to Shenandoah, Iowa, where he was then closing this deal.

The proof further discloses that on the morning of Saturday March 31, 1945, the partners met at their office, divided their bank balance by delivering to each member of the firm a check for the sum of $2,500, and reserved about $400 on deposit for outstanding office expenses, etc. That thereupon, while the appellant went to the bank to get his check cashed, the appellee Parsons placed a long-distance call and made an engagement with the Wilbe Lumber Company to leave Jackson that night for Shenandoah, Iowa, to close the purchase of this oil and gas lease, but due to delay in getting the call through, it happened that the appellant, Foster, returned to the office before the conversation ended; and that thereupon the appellant Foster went with Parsons to Brandon and checked the records during the afternoon for certain data before Parsons should leave on the night train.

The written lease was obtained at Shenandoah on Monday, April 2nd, from the Wilbe Lumber Company at fifty cents per acre, taken in the name of Parsons, but paid for out of funds arranged for by Neal at a local bank on a ten-day loan. The option which the Carter Oil Company had given its commitment to purchase on March

30th was executed in writing, and delivered on April 6th, for which there was paid $22,000. The loan was then paid off and the profit of approximately $7,500 was divided between appellees Parsons and Neal.

This suit brought by Foster to recover from the appellees one-third of the said profit, upon the ground that the lease was a partnership asset and that the profit was earned when the commitment to purchase the shooting option was given by the Carter Oil Company on the day before the dissolution of the firm, and without which commitment the lease would not have been obtained from the Wilbe Lumber Company.

It appears that the trial court did not decide the issue of facts as to whether this transaction continued to be a partnership matter, but based its decision in favor of the appellees upon an interpretation of a written instrument executed by the parties on April 14, 1945, and held the same to contitute an accord and satisfaction as to all matters between the partners except as to ownership of the Wilbe Lumber Company lease itself, which was in dispute, that is to say, it was held that this instrument of writing, by its terms, precludes the appellant Foster from claiming his part of the profit of the approximate sum of $7,500 which the appellant claims had been earned when the commitment was obtained from the Carter Oil Company on March 30, 1945, as aforesaid.

The agreement relied upon as an accord and satisfaction discloses that the appellant Foster was thereupon paid the sum of $4,488. But we think it is clear that this sum was paid in settlement for his interest in other transactions, because the instrument expressly recites that this sum was being paid to Foster for a conveyance and release unto the other two members of the former partnership of ''any and all claim, right, title or interest in and to any property of any kind or character acquired by said partnership, or said joint venture, or in which the said appellee Foster claims any interest whatsoever as a result of said partnership or joint venture, except as herein pro-

vided,'' and then expressly reserves from the settlement on that date the claim of the said Foster in regard to the lease executed by the Wilbe Lumber Company by stating that ''the execution of this instrument shall not affect the interest or *claim* of either of the parties as to said lease executed by Wilbe Lumber Company, lessor.'' (Italics ours.)

The instrument recognizes that the ownership of this lease was then in controversy between the parties; that Foster was claiming that the same was then owned by the partnership and that he was then the owner of a one-third interest therein; and that Neal and Parsons were claiming that the lease was not owned by the partnership and that Foster had no interest therein. Both the appellant and the appellees had employed attorneys at that time to represent them, respectively, in the controversy about the ownership of the said lease and the appellant's claim to one-third of the profit thereon, and we are of the opinion that the recitals of the instrument disclose that it was intended not only to reserve from the settlement the issue as to the ownership of the lease, but also as to the profit which had then been made and collected thereon. Foster testified that immediately before he signed the alleged accord and satisfaction agreement, he heard the attorney for the appellees state over the telephone to the appellant's attorney ''that this agreement did not affect the Wilbe Lumber Company deal, but everything else it did,'' and he thereupon signed the same in reliance thereon. This statement of the appellant, as a witness at the trial, was not disputed, and he was also asked the question ''Did he say whether or not it affected the profits from the lease'' and he answered, ''No, sir, it didn't, not any part of the Wilbe Lumber Company deal.''

It is not contended that the $4,488 paid to appellant was intended to cover a part of the profit claimed by him on the Wilbe Lumber Company lease, but, on the contrary, the whole record discloses that the position of Neal

and Parsons at that time was, and now is, that Foster was not entitled to any part of the said profits.

Being, therefore, of the opinion that the trial court was in error in holding that this written agreement was an accord and satisfaction between the parties, we have concluded that we should reverse and remand the cause in order that the issue of fact as to whether or not the Wilbe Lumber Company lease continued to be a partnership asset may be determined and decided by the trier of the facts under the conflicting testimony in regard thereto, and the law of partnership applicable to such finding of fact.

Reversed and remanded.